IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| CARDTEK INTERNATIONAL, LTD a/k/a CARDTEK INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> TARGET CORPORATION, <br><br> Defendant. | Case No. _____ |

**PLAINTIFF CARDTEK INTERNATIONAL'S
ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff CardTek International, Ltd. a/k/a Cardtek International, Inc. ("Cardtek" or "Plaintiff") by and through its undersigned counsel, pleads the following against Defendant Target Corporation ("Target" or "Defendant") and alleges as follows:

**THE PARTIES**

1. Plaintiff CardTek International, Ltd. a/k/a Cardtek International, Inc. ("Cardtek") is a Delaware corporation with its principal place of business at at 499 Evernia Street, Apt. 310, West Palm Beach, Florida, 33401. Cardtek is the assignee and exclusive owner of all rights, title, and interest in and owns all causes of action related to U.S. Patent Nos. 7,039,593 ("the '593 Patent"), 8,600,770 ("the '770 Patent"), and 10,628,818 ("the '818 Patent"), titled the "Payment Convergence System and Method."

2. Defendant Target Corporation ("Target") is a Minnesota corporation having its principal place of business at 1000 Nicollet Mall, Minneapolis, Minnesota 55403. It can be served with process by serving its registered agent: CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Patent Laws of the United States, 35 U.S.C. §§ 1 *et seq.*

4. This Court has personal jurisdiction over Target because it is present in and regularly transacts and conducts business in and with the residents of this District and the State of Texas. Target regularly does and solicits business across Texas and engages in persistent conduct and derives substantial revenue from goods and services prwillovided to customers in the State of Texas, including in the Eastern District of Texas.

5. Plaintiff's causes of action arise from Defendant's contacts with and activities in this District and the State of Texas. Defendant has committed acts that infringe the asserted patents within this District and the State of Texas by conducting business in the District, by at least offering for sale and selling products, programs, and services that practice the claimed inventions of the Patents-in-Suit. In addition, Defendant owns and operates its stores in this District that support and process products and services that practice the claimed inventions of the Patents-in-Suit.

6. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), (c), (d) and 1400(b) because Defendant has a permanent and continuous presence in, has stores where it regularly conducts business in, has committed acts of infringement in, and maintains regular and established places of businesses in this Eastern District of Texas.

7. In addition, Target maintains a regular and established place of business in this district through one or more stores, including, for example, at 3092 N Eastman Rd, Longview, TX 75605 and 7003 South Broadway Avenue, Tyler, TX 75703, as well as one or more distribution centers. Target uses the Target App, including its Wallet feature, to allow customers to pay for orders at one or more Target stores located in this district.

8. Cardtek is the assignee and owns all right, title, and interest to U.S. Patent Nos. 7,039,593 ("the '593 Patent"), 8,600,770 ("the '770 Patent"), 10,628,818 (the '818 Patent") with

all substantive rights in and to that patent, including the sole and exclusive right to prosecute this action and enforce the '593 and '770 Patents against infringers, and to collect damages for all relevant times.

## THE PATENTED TECHNOLOGY

9. This lawsuit involves the '593 Patent and the '770 Patent. These patents claim systems and methods that converge multiple, independent payment sources into a single payment vehicle through a single point-of-sale terminal. This dynamic data processing has the capability to combine multiple sources of information onto a single medium.

10. The specification of the patents describes a new payment system and method that converges multiple payment sources that may be ascertained, for example, from a "Smart Card." But the patented technology does not depend or rely upon the existence of a physical card. Many companies, including the Defendant, have utilized digital applications to function as an electronic payment facility for use at the point of sale. As explained below, these payment applications utilize and infringe upon the systems and processes contemplated in the '593 Patent, the '770 Patent, and the '818 Patent. The patents' claims speak in terms of a "portable storage medium," which is practiced by the Defendant's payment application as a method of storing convergence information.

11. At its core, the inventive systems and methods store information about relationships between the cardholder and various accounts that are possible payment sources. Each layer of stored payment information contains a different type of information that can be used independently from the information of all other layers. For example, first party information can be stored, which includes any payment that is directly funded by the card user, (e.g., user's credit card account, debit card, check, EBT or any other account in which the funds are controlled by the user, and other imforation associated with those payment sources), along with secondary payment information (e.g., benefits that reduce payment amount to be paid with the card holder's credit card),

and third-party payment information (e.g., insurance coverage that is secondary to a primary insurance policy, any private line of credit accounts, such as those related to healthcare, governmental assistance, gifts certificates, charitable gifts, prepayments, loyalty credit, or any other source that is not the primary insurance company and is not a direct payment from the patient).

12. Thus, the '593 Patent, the '770 Patent, and the '818 Patent patents describe not only housing information regarding the card holder's various accounts in a single medium, but also converges these independent payment sources together such that a point-of-sale terminal may amalgamate multiple payment sources into one ultimate source that can be used for myriad transactions. Through the processing capabilities of the Patents-in-Suit, sources of payment, along with any accompanying information that is stored, converge at the point of sale. By converging the payment options, or sources, the inventive systems and methods process that information to determine the amount that each source is to pay and then obtains the payment from the multiple independent sources at the point of sale. The Patents-in-Suit's technology creates an improved payment system and improved electronic payment network utilizing new point-of-sale terminal technology that allows multiple independent payment sources, with their respective servers and protocols, to be converged and utilized all in a single transaction occurring at the point-of-sale terminal.

## FIRST CLAIM

### (Infringement of U.S. Patent No. 7,039,593)

13. Cardtek re-alleges and incorporates herein by reference Paragraphs 1–12 of its Complaint.

14. The '593 Patent, entitled "Payment Convergence System and Method" was duly and lawfully issued on May 2, 2006. A true and correct copy of the '593 Patent is attached hereto as Exhibit 1.

15. The '593 Patent names Robert David Sager as inventor. Ex. 1 at 1.

16. The '593 Patent has been in full force and effect since its issuance. Cardtek owns, by assignment, the entire right, title, and interest in and to the '593 Patent, including the right to seek damages for past, current, and future infringement thereof.

17. Cardtek is informed and believes, and thereon alleges, that Target has infringed one or more claims of the '593 Patent, in violation of 35 U.S.C. § 271, by, among other things, making, using, offering to sell, and selling within the United States, supplying or causing to be supplied in or from the United States, and importing into the United States, without authority or license, Cardtek's technology that use the point-of-sale payment convergence system and method in an infringing manner.

18. The accused products include Target's point-of-sale terminals and the Target Application, along with associated backend servers.

19. For example, the accused products embody every limitation of at least Claim 1 of the '593 Patent, literally or under the doctrine of equivalents, as set forth below. Likewise, a claim chart comparing independent claim 1 of the '593 Patent to a representative Accused Product is attached as Exhibit 2. The further descriptions below, which are based on publicly available information, are preliminary examples and are non-limiting.

20. Target is a publicly traded corporation that operates nearly 2,000 retail stores across 50 states and the District of Columbia.

21. Target makes and offers an application (the "Target App") that allows its customers to pay for purchases at Target locations using multiple payment sources. Target also offers a Target Circle loyalty program and Target 360 membership program that allow customers to utilize eligible rewards and "saved deals" to purchase items through its mobile application.

22. To utilize the Tareget App for payment at a point-of-sale terminal, Target customers must provide payment information for their credit card, debit card, gift cards, pre-loaded funds, or similar payment source. To redeem rewards and "saved deals" and make payment at a point-of-sale terminal, the customer presents a barcode or QR code generated by the application at the store's point-of-sale terminals. The application then automatically processes payment information from the user-provided payment source to consummate the transaction.

23. Target's application can be used to purchase items at retail locations through a combination of rewards and "saved deals," as well as dollars from the user-provided payment source. Thus, when a customer uses the Target application at a particular store's point-of-sale terminal, the point-of-sale system establishes a transaction total, and the customer can utilize rewards and "saved deals" to pay for qualifying items—the primary payment source—and pay any remaining balance using the user-provided payment source—the secondary payment source. All of this is done at the point of sale.

24. Target's application stores convergence information including data about a plurality of payment sources for the transaction and said convergence information including processing instructions, including order information for utilization of said plurality of payment sources. In other words, Target's application converges payment sources at a point of sale, determines which payment sources are primary and which are ancillary, processes this information, and then utilizes this hierarchy to complete the transaction—all of which occurs after the total amount of the transaction is determined.

25. On information and belief, the infringing technology utilized by Target in administering its mobile application, point-of-sale terminals, and associated backend servers was obtained directly or indirectly from disclosure later patented by Robert David Sager and its assignee, Cardtek.

26.     Target has directly and/or indirectly (by inducement and/or contributory infringement) willfully infringed one or more claims of the '593 Patent in violation of 35 U.S.C. § 271, including, but not limited, to Claim 1.

27.     Target directly and/or indirectly infringed the '593 Patent, literally and/or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing in or into the United States, without authority, products that fall within the scope of one or more claims of the '593 Patent in violation of 35 U.S.C. § 271(a).

28.     Target has indirectly infringed and continues to indirectly infringe (either literally or under the doctrine of equivalents) at least Claim 1 of the '593 Patent, in violation of 35 U.S.C. § 271(b), by actively inducing the infringement of the '593 Patent by others and Target will continue to do so unless enjoined by this Court. Target's deliberate and/or willfully blind actions include, but are not limited to, actively marketing to, supplying, causing the supply to, encouraging, recruiting, and instructing others such as consumers, businesses, distributors, agents, sales representatives, end-users, customers to use, make available for another's use, promote, market, distribute, import, sell and/or offer to sell the Accused Instrumentality. These actions, individually and/or collectively, have induced and continue to induce the direct infringement of the '593 Patent by others such as consumers, businesses, distributors, agents, sales representatives, end-users, account holders and customers. Target knew and/or was willfully blind to the fact that the induced parties' use, making available for another's use, promotion, marketing, distributing, importing, selling and/or offering to sell the Accused Instrumentality would infringe the '593 Patent.

29.     Target has indirectly infringed and continues to indirectly infringe (either literally or under the doctrine of equivalents) at least Claim 1 of the '593 Patent, in violation of 35 U.S.C. § 271(c), by contributing to the direct infringement of the '593 Patent by others, such as consumers,

businesses, distributors, agents, sales representatives, end-users, customers, by offering to sell or selling within the United States the instrumentalities which are each a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

30. Plaintiff has fully complied with the marking requirements of 35 U.S.C. § 287. Neither Robert David Sager nor Cardtek have made or sold any products practicing the claims of the '593 Patent. Likewise, no other party had a license to the '593 patent prior to its expiration.

31. Target has had actual knowledge of the '593 Patent at least as of receipt of a September 18, 2020 letter from Cardtek. Cardtek has known and intended (since receiving such notice) that its continued actions would infringe and actively induce and contribute to the infringement of one or more claims of the '593 Patent. As a result of Target's infringement of the '593 Patent, Plaintiff is entitled to monetary damages in an amount adequate to compensate for Target's infringement, but in no event less than a reasonable royalty for the use made of the invention by Target, together with interest and costs as fixed by the Court.

## SECOND CLAIM

### (Infringement of U.S. Patent No. 8,600,770)

32. Cardtek re-alleges and incorporates herein by reference Paragraphs 1–31 of its Complaint.

33. The '770 Patent, entitled "Payment Convergence System and Method" was duly and lawfully issued on December 3, 2013. A true and correct copy of the '770 Patent is attached hereto as Exhibit 3.

34. The '770 Patent names Robert David Sager as inventor. Ex. 3 at 1.

35. The '770 Patent has been in full force and effect since its issuance. Cardtek owns by assignment the entire right, title, and interest in and to the '770 Patent, including the right to seek damages for past, current, and future infringement thereof.

36. Cardtek is informed and believes, and thereon alleges, that Target has infringed one or more claims of the '770 Patent, in violation of 35 U.S.C. § 271, by, among other things, making, using, offering to sell, and selling within the United States, supplying or causing to be supplied in or from the United States, and importing into the United States, without authority or license, Cardtek's technology that use the point-of-sale payment convergence system and method in an infringing manner.

37. The accused products include Target's point-of-sale terminals and the Target App, along with associated backend servers.

38. For example, the accused products embody every limitation of at least Claim 7 of the '770 Patent, literally or under the doctrine of equivalents, as set forth below. Likewise, a claim chart comparing independent claim 1 of the '770 Patent to a representative Accused Product is attached as Exhibit 4. The further descriptions below, which are based on publicly available information, are preliminary examples and are non-limiting.

39. As detailed above, the accused products can be used at Target retail stores to purchase items through a combination of rewards and "saved deals," as well as dollars. Using the application at the store's point-of-sale terminal, Target's application allows its customers to purchase items by redeeming rewards or "saved deals"—the primary payment source—and to pay the remaining balance of the transaction with funds from their credit card, debit card, gift cards, pre-loaded funds, or other similar payment source—the secondary payment source. Information regarding these payment sources are all stored in the Target application. In other words, Target's application contains a convergence of payment sources at a point of sale through which a primary

and secondary payment source are determined and drawn down to complete a transaction—all of which occurs after the total amount of the transaction is determined. This processing and utilization of payment source information all occurs at the point of sale.

40. On information and belief, the infringing technology utilized by Target in administering its mobile application, point-of-sale terminals, and associated backend servers was obtained directly or indirectly from disclosure later patented by Robert David Sager and its assignee, Cardtek.

41. Target has directly and/or indirectly (by inducement and/or contributory infringement) willfully infringed one or more claims of the '593 Patent in violation of 35 U.S.C. § 271, including, but not limited, to Claim 1.

42. Target has directly and/or indirectly infringed the '770 Patent, literally and/or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing in or into the United States, without authority, products that fall within the scope of one or more claims of the '770 Patent in violation of 35 U.S.C. § 271(a).

43. Target has indirectly infringed and continues to indirectly infringe (either literally or under the doctrine of equivalents) at least Claim 1 of the '593 Patent, in violation of 35 U.S.C. § 271(b), by actively inducing the infringement of the '593 Patent by others and Target will continue to do so unless enjoined by this Court. Target's deliberate and/or willfully blind actions include, but are not limited to, actively marketing to, supplying, causing the supply to, encouraging, recruiting, and instructing others such as consumers, businesses, distributors, agents, sales representatives, end-users, customers to use, make available for another's use, promote, market, distribute, import, sell and/or offer to sell the Accused Instrumentality. These actions, individually and/or collectively, have induced and continue to induce the direct infringement of the '593 Patent by others such as consumers, businesses, distributors, agents, sales representatives,

end-users, account holders and customers. Target knew and/or was willfully blind to the fact that the induced parties' use, making available for another's use, promotion, marketing, distributing, importing, selling and/or offering to sell the Accused Instrumentality would infringe the '593 Patent.

44. Target has indirectly infringed and continues to indirectly infringe (either literally or under the doctrine of equivalents) at least Claim 1 of the '593 Patent, in violation of 35 U.S.C. § 271(c), by contributing to the direct infringement of the '593 Patent by others, such as consumers, businesses, distributors, agents, sales representatives, end-users, customers, by offering to sell or selling within the United States the instrumentalities which are each a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

45. Plaintiff has fully complied with the marking requirements of 35 U.S.C. §287. Neither Robert David Sager nor Cardtek have made or sold any products practicing the claims of the '770 Patent. Likewise, no other party had a license to the '770 patent prior to its expiration.

46. Target has had actual knowledge of the 770 Patent at least as of receipt of a September 18, 2020 letter from Cardtek. Cardtek has known and intended (since receiving such notice) that its continued actions would infringe and actively induce and contribute to the infringement of one or more claims of the '770 Patent.

47. As a result of Target's infringement of the '770 Patent, Plaintiff is entitled to monetary damages in an amount adequate to compensate for Target's infringement, but in no event less than a reasonable royalty for the use made of the invention by Target, together with interest and costs as fixed by the Court.

## THIRD CLAIM

### (Infringement of U.S. Patent No. 10,628,818)

48. Cardtek re-alleges and incorporates herein by reference Paragraphs 1–47 of its Complaint.

49. The '818 Patent, entitled "Payment Convergence System and Method" was duly and lawfully issued on April 21, 2020. A true and correct copy of the '818 Patent is attached hereto as Exhibit 5.

50. The '818 Patent names Robert David Sager as inventor. Ex. 5 at 1.

51. The '818 Patent has been in full force and effect since its issuance. Cardtek owns by assignment the entire right, title, and interest in and to the '818 Patent, including the right to seek damages for past, current, and future infringement thereof.

52. Cardtek is informed and believes, and thereon alleges, that Target has infringed one or more claims of the '818 Patent, in violation of 35 U.S.C. § 271, by, among other things, making, using, offering to sell, and selling within the United States, supplying or causing to be supplied in or from the United States, and importing into the United States, without authority or license, Cardtek's technology that use the point-of-sale payment convergence system and method in an infringing manner.

53. The accused products include Target's point-of-sale terminals and the Target App, along with associated backend servers.

54. For example, the accused products embody every limitation of at least Claim 7 of the '818 Patent, literally or under the doctrine of equivalents, as set forth below. Likewise, a claim chart comparing independent claim 1 of the '818 Patent to a representative Accused Product is attached as Exhibit 6. The further descriptions below, which are based on publicly available information, are preliminary examples and are non-limiting.

55. As detailed above, the accused products can be used at Target retail stores to purchase items through a combination of rewards and "saved deals," as well as dollars. Using the application at the store's point-of-sale terminal, Target's application allows its customers to purchase items by redeeming rewards or "saved deals"—the primary payment source—and to pay the remaining balance of the transaction with funds from their credit card, debit card, gift cards, pre-loaded funds, or other similar payment source—the secondary payment source. Information regarding these payment sources are all stored in the Target application. In other words, Target's application contains a convergence of payment sources at a point of sale through which a primary and secondary payment source are determined and drawn down to complete a transaction—all of which occurs after the total amount of the transaction is determined. This processing and utilization of payment source information all occurs at the point of sale.

56. On information and belief, the infringing technology utilized by Target in administering its mobile application, point-of-sale terminals, and associated backend servers was obtained directly or indirectly from disclosure later patented by Robert David Sager and its assignee, Cardtek.

57. Target has directly and/or indirectly (by inducement and/or contributory infringement) willfully infringed one or more claims of the '818 Patent in violation of 35 U.S.C. § 271, including, but not limited, to Claim 1.

58. Target has directly and/or indirectly infringed the '818 Patent, literally and/or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing in or into the United States, without authority, products that fall within the scope of one or more claims of the '818 Patent in violation of 35 U.S.C. § 271(a).

59. Target has indirectly infringed and continues to indirectly infringe (either literally or under the doctrine of equivalents) at least Claim 1 of the '818 Patent, in violation of 35 U.S.C.

§ 271(b), by actively inducing the infringement of the '818 Patent by others and Target will continue to do so unless enjoined by this Court. Target's deliberate and/or willfully blind actions include, but are not limited to, actively marketing to, supplying, causing the supply to, encouraging, recruiting, and instructing others such as consumers, businesses, distributors, agents, sales representatives, end-users, customers to use, make available for another's use, promote, market, distribute, import, sell and/or offer to sell the Accused Instrumentality. These actions, individually and/or collectively, have induced and continue to induce the direct infringement of the '818 Patent by others such as consumers, businesses, distributors, agents, sales representatives, end-users, account holders and customers. Target knew and/or was willfully blind to the fact that the induced parties' use, making available for another's use, promotion, marketing, distributing, importing, selling and/or offering to sell the Accused Instrumentality would infringe the '818 Patent.

60. Target has indirectly infringed and continues to indirectly infringe (either literally or under the doctrine of equivalents) at least Claim 1 of the '818 Patent, in violation of 35 U.S.C. § 271(c), by contributing to the direct infringement of the '818 Patent by others, such as consumers, businesses, distributors, agents, sales representatives, end-users, customers, by offering to sell or selling within the United States the instrumentalities which are each a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

61. Plaintiff has fully complied with the marking requirements of 35 U.S.C. §287. Neither Robert David Sager nor Cardtek have made or sold any products practicing the claims of the '818 Patent.  Likewise, no other party had a license to the '818 patent prior to its expiration.

62. Target has had actual knowledge of the '818 Patent at least as of receipt of a September 18, 2020 letter from Cardtek. Cardtek has known and intended (since receiving such notice) that its continued actions would infringe and actively induce and contribute to the infringement of one or more claims of the '818 Patent.

63. As a result of Target's infringement of the '818 Patent, Plaintiff is entitled to monetary damages in an amount adequate to compensate for Target's infringement, but in no event less than a reasonable royalty for the use made of the invention by Target, together with interest and costs as fixed by the Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter:

a. A judgment in favor of Plaintiff that Defendant has infringed, either literally and/or under the doctrine of equivalents, the '593 Patent, the '770 Patent, and the '818 Patent;

b. A judgment and order requiring Defendant to pay Plaintiff its damages, enhanced damages, costs, expenses, and pre-judgment and post-judgment interest for Defendant's infringement of the '593 Patent, the '770 Patent, and the '818 Patent;

c. A judgment and order requiring Defendant to provide an accounting and to pay supplemental damages to Plaintiff, including without limitation, pre-judgment and post-judgment interest;

d. A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Plaintiff its reasonable attorneys' fees against Defendant; and

e. Any and all other relief as the Court may deem appropriate and just under the circumstances.

| | |
|---|---|
| Dated: December 9, 2025 | Respectfully submitted,<br><br>*/s/ Logan E. Johnson*<br>Logan E. Johnson<br>Texas State Bar No. 24013855<br>Lead Attorney<br><br>Varant Yegparian<br>Texas State Bar No. 24070893<br>HICKS JOHNSON PLLC<br>1550 Lamar St., Suite 1900<br>Houston, Texas 77010<br>Tel: (713) 357-5150<br>Fax: (713) 357-5160<br>ljohnson@hicksjohnson.com<br>vyegparian@hicksjohnson.com<br><br>Kevin Cadwell<br>Texas State Bar No. 24036304<br>Lisa Thomas<br>Texas State Bar No. 24079455<br>Brad Bowling<br>Texas State Bar No. 24040555<br>CADWELL CLONTS REEDER & THOMAS LLP<br>5373 W. Alabama Street, Suite 457<br>Houston, Texas 77056-5998<br>Tel: (713) 360-1560<br>kcadwell@ccrtlaw.com<br>lthomas@ccrtlaw.com<br>bbowling@ccrtlaw.com<br><br>J. Thad Heartfield<br>Texas State Bar No. 09347000<br>THE HEARTFIELD LAW FIRM<br>2195 Dowlen Road<br>Beaumont, Texas 77706<br>(409) 866-3318<br>thad@heartfieldlawfirm.com<br><br>***Attorneys for Plaintiff***<br>***Cardtek International, Ltd.*** |